CARRINGTON, Judge.
I concur with the decree of the Chancellor, so far as it goes to overrule the demurrers of two of the appellants. For it was unquestionably a proper subject for the interposition of a *338 Court of Equity, and strictly within its jurisdiction. I am also of opinion with the Chancellor, that the plaintiff, neither as heir at law, executor, or trustee, could proceed, at law, as for a condition broken: He having parted with his powers, by his own assent and distribution of the slaves amongst the legatees.
But I differ widely from the Chancellor with respect to the exercise of his jurisdiction. Perhaps, I do not understand the principles and reasoning, upon which, he founds his decree; but the result is, clearly, contrary to both law and Equity.
It is contrarj' to law; because he has not preserved the principles of the only law giving owners power to emancipate. It is contrary to Equity, because it either fixes, on the public, a certain expense, or leaves a number of these people to starve, for want of subsistence.
Until the year 1748, every owner of a slave had a right to emancipate him, upon the principle of having a right to dispose of his own property as he pleased; but the Legislature, conceiving that inconveniences arose therefrom, passed a law to prevent the manumission of slaves, except for ^meritorious services, to be judged of by the executive. Which law remained unaltered,'until the year 1782; when the act passed allowing emancipation upon condition that the public is indemnified against loss and expense. This is still the law, and ought to have been attended to by the Chancellor in forming his decree.
I perceive no difficulty 'in ascertaining the meaning and intention of both the testators ; who discover a strong desire to emancipate their slaves immediately on their deaths. But as the then existing laws would not permit, they did all they could towards effecting it, by directing, that it should be done, as soon as the laws would authorize it; and, in the mean time, making temporary devises of them amongst their children and friends, with a positive condition annexed, that the different dev-isees should liberate them, as soon as by law it should be allowable, on their respectively attaining, to the age of thirty years. Which period was probably fixed upon, with a view to the labour of the slaves affording some compensation, for the trouble and expense of taking care of the aged or infirm, and rearing the children.
The question, then, is, whether these devises are sustainable? I hold that they are; and not liable to the rule respecting chattel interests, limited on more remote contingencies, than the law allows. Eor the subjects of the devises are different; inasmuch as in the devise of chattels, property only, is concerned; but liberty is devised in this case. Both sacred rights indeed; but the rules of limitation not necessarily the same with regard to them.
In point of fact, the contingency actually happened, within a very small space of time. For, within six years, from the date of Jonathan Pleasants’ will, a law was passed enabling owners to emancipate their slaves.
*But, by this law, the owner, who would manumit his slaves, must gi've security to indemnify the public, against the expense of supporting such as are aged, infirm, or infants. A provision which the decree has not attended to, although it certainly, ought not to be overlooked. But I do not think, that the holders, in the present case, should be compelled to give it themselves. On the contrary, I think the emancipation should be upon the condition, that the present friend of the appel-lees, or some other person' or persons, will procure the security required by law. Which will be consistent with the conduct of the Legislature in two recent instances; namely, in the case of Mayo’s slaves, in which the executors were by an order of the Court of Chancery, founded on the law of 1787 for emancipating those slaves, directed to reserve funds enough for the purpose. The other case was that of More-man’s slaves. In which case, the act of Assembl}', for emancipating of them, directs, in so many words, that the executor, or some other person, should be bound to indemnify the public.
Having mentioned my opinion upon the general question concerning emancipation, I shall now state what I conceive to be the periods, at which, the appellees will be respectively entitled to their freedom, upon the conditions just explained. I think they are to be emancipated in the following order. That is to say, all those now above the age of thirty years immediately; and the increase of mothers above the age of thirty, at the term of the birth of the child, are also to be emancipated immediately. But those born of mothers, not thirty years of age at the birth of the child, are not to be liberated, until they arrive at the age of thirty; and the same rules are to be observed, with respect to their progeny, born, during the servitude of the mothers. Which seems to me to satisfy the meaning of the testators.
The decree for profits is I think new and unprecedented. Besides the account, when the deductions for the trouble and expense of taking care of the aged and infirm, and for rearing of the children is made, would probably yield very little. Under every point of view, therefore, I am against the account; and think the decree, should be corrected in that respect likewise.
Some other alterations are wanting still. For all the defendants have not been fully heard. Two demurred, and as to them the cause was properly heard. But the cause was not in a proper situation to be heard as to Elizabeth Pleasants; and, in the case of Ned, there was no answer, nor the bill taken for confessed, after the proper previous steps. Therefore, I think, that, as to those parties, the cause should go back to the Court of Chancery, in order, that the proper proceedings may be had therein with respect to them; so that they may have an opportunity of supporting their titles, if they can do so.
Besides no attention has been paid to creditors.
Although it may not be the case, yet it is possible, that John and Jonathan Pleas-ants owed debts, which are still unpaid. If there be any such creditors their rights should be secured.
*339 The holders of the slaves, may owe debts; and it is expressly said to have been the ■case of Logan. Perhaps too some of them may have been mortgaged, or sold to innocent purchasers, upon the faith of possession, and apparent ownership in the legatees. Now, although I will not say, at present, whether the debts and contracts ■of the legatees ought or ought not to affect the slaves, because the case is not before me, yet the door should not be shut to en-quiry, and such creditors and' purchasers excluded from shewing, if they can, that they have an equitable lien.”
Upon the whole, I think the decree should be reversed; and a new one entered, conformable to the opinion, which I have delivered.
«PENDLETON, President.
On mature consideration, I am of opinion, that the suit in Chancery cannot be sustained upon the ground of the appellees claim as heir at law to take the slaves for the condition broken, it being the practice of that court to relieve against, forfeitures and not to aid or enforce them. Neither will his claim, as executor, have that effect; because, having long since assented to the several legacies and bequests of these people, he had fully executed his power over the subject. At the same time, these ■characters furnish a commendable reason for his stating the case of these paupers to the court; and it ought to be heard and decided upon, without a rigid attention to ■strict legal forms, since it can be done, without material injury to the other parties.
And upon a view of the case, I am of opinion, that the paupers are not legally emancipated under the wills of the testators and the several acts of Assembly; but if they are entitled to relief, at all, it is on the ground of a trust created by the wills, that their manumission should take place, upon a contingent event, which it is alleged has essentially happened, but requires an act to be done by the possessors, who refuse to perform it, and a Court of Equity can, alone, enforce the execution of the trust, or make the necessary arrangements therein; and therefore, that there is no error in so much of the decree, as overrules the demurrers of the appellants Mary Logan, Isaac Pleasants and Samuel Pleas-ants jr. for want of jurisdiction.
But, as the cause was only set for hearing on the demurrers, and not on the answers and exhibits, it would seem, that, regularly, that court could not, in that state of the proceedings, have proceeded to a hearing and ■decree upon the merits: Nevertheless, upon the principle, before stated, of not adhering to strict form, in this pauper case where essential justice can be done; (since «the answers of these three defendants put their defence upon the wills and acts of Assembly, without alleging any facts to influence their construction, and the counsel, on both sides, have argued the merits, at large,) the court have, in this case, for convenience, without meaning to fix a precedent, considered and determined the general question; leaving, however, the claims of Elizabeth Pleasants and Daniel. Teasdale to part of the paupers, ■under titles paramount to the will of John Pleasants, and the question, how far those in the possession of Mary Logan shall be liable to the debts of her husband, open for discussion in the Court of Chancery, upon proper statements of the facts, and exhibits relative thereto; which they are to be at liberty to introduce in that Court
Although the testators, at the time of making their respective wills, had not power to manumit, and if they had devised them upon condition that the devisees should emancipate them immediately, the condition, being unlawful, would have been void, and the property vested; yet a condition, that they should become free when the law would permit it, was not of that sort.
To consider this freedom in the light of a limitation of the remainder of a chattel, upon a contingent event, it would seem to assimilate to the case of such remainder, limited over upon a general dying without issue, and therefore, void; since the Legislative permission might never be given : might be afforded one hundred years after; or at any earlier period. And the will in the other case, is allowed to be the rule of judgment, unaltered by the event, although the dying without issue shall happen in a reasonable time; all being involved in one fate. But I am of opinion, that it would be too rigid to apply that rule, with all its consequences, to the present case; and that a reasonable principle ought to be adopted, to suit its peculiar circumstances; which is, that, if the event happens whilst the slaves remain in the possession «of the family, without change by the intervention of creditors or purchasers, since the contending parties would be those whose interests had been contemplated by, the testators, the bequest ought to take place: But that the case of such intervening claims, not being in the view of the testators, it ought to be considered, how far they should, in equity, prevent the devise of the manumission from taking effect. So far therefore, as concerns the family, I should have had no difficulty, in decreeing in favour of the paupers, if the wills had directed a general emancipation, when permitted, and the Legislature had permitted it, without any condition annexed to it.
The difficulty arises from the testators not having directed a general manumission, when permitted by law ; but a limited one, directing all future generations of these people, born whilst their mothers were under thirty, to serve to that age: founded no doubt, upon a consideration of the interest of his family, and that of the slaves.
On this middle state the Legislature have not declared their will; except in a case, which assimilates to this, namely, that of mulattoes, the descendants of a free white woman by a negro; all of whom, born whilst the mother was under thirty one years of age, were to serve to that age, in all generations, by an act passed at an early period, and continued in force until 1764, when it was repealed; which is not conclusive, as to their will, upon the present subject. On the other hand the Legislature have permitted a voluntary unlimited emancipation, but annexed a condition, that the person liberating shall support and main *340 tain all such, as in the judgment of the Court are not of sound mind or body or above 45, or males, under the age of 21, and females, under 18; to be levied upon him, or his estate, by order of the court in case of neglect or refusal. On these terms the testators have not declared their minds, whether *they would, or would not, have compelled the devisees to emancipate, subject to them.
Under this difficulty; the Court endeavored to model a decree, to effect the purpose of the paupers, without essentially violating the wills or the laws; and was of opinion, that the limited manumission, according to the modifications in the wills of the testators, could, alone, take place and be decreed; and would have found no difficulty in making such a decree, from the silence of the Legislature, on such a state of servitude (since it might in future act upon the subject, and either continue or discontinue it,) but had insuperable difficulty upon the terms imposed by the law; which may be important. The person empowered to emancipate, had an opportunity of judging, whether he would do the act upon that condition? In the present case, the devisees, the legal proprietors, oppose the manumission, and the question is, whether they shall be compelled, under the wills, to do the act, be subject to new hardships, not imposed on them by the wills, and on which no person can say, what would have been the decision, had the testators contemplated the subject?
On Moremans will an act passed in 1787, reciting his will in 1778, by which he devised certain slaves by name to each of the different legatees to enjoy their labor; the males to 21, the females to 18, and then all to be free; except some,1 devised to his wife, which she was to have for life, and then they were to be free; and except another parcel, who were to be immediately free. The act divides them into four classes.
1. Those who were between 21 and 45.
2. Those devised to the mother ihen dead: which two classes, were to be immediately free, as if born so; and their increase were also to be free.
3. All under 21 and 18 were to be free, when they attained those ages, and the increase of those *to be free at a future period, were to be free with the parents.
4. Those above 45, to be free, when Johnson the executor, or any other should enter into bonds, with approved security to the County Court, with condition that they should not become chargeable to the public. This was in spirit pursued by a majority of the Court; and a decree has been formed, to the following effect.
“The court is of opinion, that thefe is no error in so much of the decree of the said High Court of Chancery as overruleth the demurrers of the appellants Mary Pleasants, Isaac Pleasants and Samuel Pleasants junior for want of jurisdiction in the said court, but that there is error in some of the principles on which the decree upon the merits is founded and part of the reasoning, thereupon, is not approved by this court: Therefore it is decreed and ordered that so much of the said decree as over-ruleth the said demurrers, be affirmed, and that the residue of the said decree be reversed. And this court, proceeding to make such decree as the said High Court of Chancery should have pronounced, is of opinion, that altho’ the testators, at the time of making their respective wills, had not power to manumit, and if they had devised them upon condition that the devisees should emancipate them immediately, the condition, being unlawful, would have been void, and the property'vested; yet the condition that they should become free when the law would permit it, was not of that sort. That to apply the rule respecting the limitation of the remainder of a chattel upon too remote a contingency, with all its consequences, to the present case, would be too rigid, but that a reasonable principle ought to be adopted to suit its peculiar circumstances ; which is this, that if the event happens whilst the slaves remain in the possession of the family, without change by the intervention of creditors *or purchasers, since the contending parties would be those whose interest had been contemplated by the testators, the bequest ought to take place; but that the case of such intervening claims, not being in the view of the testators, it ought to be considered how far the}7 should in equity prevent the devise of the manumission from taking effect. So far therefore as concerns the family, the court would have had no difficulty in decreeing in favour of the paupers, if the wills had directed a general emancipation, when permitted, by law, and the Legislature had permitted it, without any condition annexed; but a difficulty arises from the testators not having directed a general manumission, when allowed by law, but a limited one, directing that all future generations of these people, born whilst their mothers were under thirty, should serve to that age; founded, no doubt, upon considerations of the interest of his family, and that of the slaves; on which middle state the Legislature have not declared their will; and on the other hand the Legislature have permitted an unlimited emancipation but annexed a condition imposing upon the person liberating, certain terms for the sake of the community, of which the persons making voluntary manumissions might judge, whether they would do the act upon these terms, and use their pleasure, and on these terms the testators have not declared their minds, whether they would or would not have compelled the dev-isees against their inclination, to emancipate subject to them. Under this difficult} the court endeavoured to model a decree, to effect the purpose of the paupers, without essentially violating the wills; and is of opinion that the limited manumission according to the modifications in the wills of the testators, can alone take place and be decreed, and that the terms for securing the public against the maintenance of the aged or infirm, cannot be equitably imposed upon the devisees. It is therefore further decreed and ordered that all the slaves of which the testators were possessed as their property at the time of their respective deaths not subjected to the claims of the creditors or’ purchasers *341 before stated, and who are now above the age of forty-five years and their increase born after their respective mothers had attained the age of thirty years (so soon as Robert Pleasants the executor, the several trustees, or any other person shall in the courts of the several counties in which the said slaves respectively reside enter into bonds with approved sureties payable to the Justices then sitting in each court, and their successors, with condition that the said slaves shall not become chargeable to the public, or enter into one such bond for the whole in the General Court,) and all such as are now above thirty and under the age of forty-five years immediately shall be emancipated and set free to all intents and purposes, in like manner as if they had been born free, and that all who are now under the age of thirty, and whose mothers had not attained that age at their birth; and all their future descendants, born whilst their mothers are in such service, do serve their several owners until they shall respectively attain the age of thirty years, and then be in like manner free; and when their freedom shall severally take effect according to this decree, there shall be delivered to each of them, by their respective masters or mistresses, a certificate written or printed, attesting their freedom, in such form as shall be directed by the said High Court of Chancery. That no account ought to be taken of profits, it being unusual in such cases, and less reasonable in this very difficult one. And the cause is remanded to the said High Court of Chancery for a state to be taken of the present condition of the several persons, and their rights ascertained, according to the principles of this decree; also for further proceedings to be had, respecting the claims of .Elizabeth Pleasants and ^Daniel Teasdale to part of the slaves, under titles paramount to the will of John Pleasants, and the claim of the creditors of Charles Logan, upon proper statements of the facts and exhibits relative thereto; which they are to be at liberty to introduce in the said court.”